**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

FRANK HEARRING,

Plaintiff,

v.

WILLIAM GITTERE, *et al.*,

Defendants.

Case No. 3:24-CV-00004-CLB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

[ECF No. 34]

Currently pending before the Court is Defendants Ruby Cordero (Arroyo), Scott Boone, Tasheena Cooke, Christopher Coulston, James Dzurenda, Michael Minev, and Autumn Snow's (collectively "Defendants") motion for summary judgment. (ECF No. 34.) Plaintiff Frank Hearring ("Hearring") responded, (ECF No. 36), and Defendants did not reply. For the reasons stated below, Defendants' motion for summary judgment, (ECF No. 34), is granted in part and denied in part.

## I. BACKGROUND

### A. Procedural History

On January 3, 2024, Hearring filed a civil rights complaint under 42 U.S.C. § 1983, and an application to proceed *in forma pauperis* on January 10, 2024, regarding events which occurred while incarcerated with the Nevada Department of Corrections ("NDOC") at Northern Nevada Correctional Center ("NNCC") and Ely State Prison ("ESP"). (ECF Nos. 1, 5.) On January 20, 2025, Hearring filed a second amended complaint ("Operative Complaint"), (ECF No. 10). The Court screened the Operative Complaint pursuant to 28 U.S.C. § 1915A(a) and allowed Hearring to proceed on the following claims: (1) Eighth Amendment deliberate indifference to serious medical needs; and (2) Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") disability discrimination. (ECF No. 13.)

On August 19, 2026, Defendants filed a motion for summary judgment arguing: (1)

Hearring failed to exhaust his administrative remedies for each claim; (2) Defendants are entitled to qualified immunity; and (3) Hearring's claims do not survive summary judgment standards. (ECF No. 34.)

Hearring responded, arguing Defendants repeatedly failed to provide sufficient medical care by refusing to provide medication, failing to timely provide accommodations, ignoring the surgical recommendation of numerous orthopedic doctors, and inadequately responding to his grievance requests. (ECF No. 36.) Hearring alleges Defendants refused to provide proper ADA accommodations despite knowing he requires an egg crate mattress, double mattress, bottom bunk, and walker as a result of his hip injury. (*Id.*) Defendants did not reply.

**B. Facts[1]**

Hearring is an inmate in the custody of the NDOC and is currently housed at NNCC in Carson City, Nevada. (ECF No. 10 at 1.) Prior to incarceration, Hearring was shot in May 2005, and the bullet remains in his left hip. (*Id*. at 170.) Hearring has experienced pain and medical issues as a result. (ECF No. 10.) On or around January 4, 2022, Hearring was transferred to ESP.[2] (*Id*. at 11.) During the intake process, Hearring informed the medical staff of the bullet in his hip and was told he would see medical within two weeks. (*Id.*) The medical visit did not occur. (*Id*.)

On January 5, 2022, Hearring filed an informal grievance stating he is receiving

---

[1] The facts recited herein are undisputed unless otherwise indicated. However, the Court notes that to support the motion for summary judgment, the only evidence submitted by Defendants is an incomplete copy of Hearring's grievance history – no medical records, discovery materials or other evidence that relate specifically to Hearring's medical and disability related claims. Accordingly, the statement of facts stated herein is limited to these materials.

[2] As Hearring's complaint is a written statement subscribed in proper form as true under penalty of perjury, (ECF No. 10 at 33), the Court may accept certain statements in the complaint as a substitute for an affidavit. Fed. R. Civ. P. 56 advisory committee's note (2010) ("28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit."). Hearring's contentions in his pleadings may be considered as evidence to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

inadequate medical care, specifically noting he has an outstanding order for a double mattress he has not received. (*Id*. at 176-178.) There was no official response until September 8, 2022, which stated Hearring was seen by an NDOC provider on April 11, 2022 and June 13, 2022 to discuss a plan of care, and to kite medical with additional concerns. (*Id*. at 179.) On March 22, 2022, Hearring filed an informal grievance indicating he was experiencing pain and an inability to sit or stand for extended periods. (*Id.* at 157-159.) Hearring received an official response denying his informal grievance because Hearring was seen by a provider on June 13, 2022 and two months later an MRI was performed. (*Id*. at 160.) Hearring then filed a first level grievance asserting he was prescribed medicine which was never issued, and his current medication is ineffective resulting in continuous pain. (*Id.* at 161, 163-164.) NDOC officials denied Hearring's first level grievance explaining Hearring was seen by an orthopedic doctor who administered a steroid shot and received orders for prescription medication and a double mattress. (*Id*. at 162.) Hearring responded with a second level grievance stating the orthopedic doctor recommended surgery, and he was never issued the double mattress. (*Id*. at 165, 167.) Hearring's second level grievance was marked resolved on April 5, 2023, explaining Hearring received his double mattress and must kite medical with additional concerns. (*Id*. at 166.) Hearring continued to file numerous medical kites and grievances discussing his pain and inadequate medical care throughout 2022. (ECF Nos. 10, 34.)

On May 27, 2023, Hearring filed an informal grievance explaining he visited an orthopedic surgeon who stated Hearring "need[s] to be transferred for surgery," and that ESP is depriving Hearring of medical treatment by failing to provide surgery. (ECF No. 10 at 150-152.) The grievance was denied because there is a pending request with the URC committee who will determine if Hearring is approved for surgery. (*Id.* at 153.) Hearring responded with a first level grievance, claiming he has been dealing with pain for years, and he is also missing an egg crate mattress ordered over 60 days ago. (*Id*. at 154, 156.) NDOC partially granted the first level grievance acknowledging that the provision of an egg crate mattress was untimely, but restated the URC is responsible for determining

surgery eligibility. (*Id*. at 155.) On July 19, 2023, Hearring "awoke to severe numbness located at the top of [his] right thigh down to the tips of [his] toes," which was assessed by medical staff and determined to be the result of a pinched nerve in his back. (*Id*. at 22.) In his sworn complaint, Hearring states that despite his nerve pain he was forced to work a culinary shift on August 27, 2023, during which he repeatedly requested to be seen by medical but was refused. (*Id*. at 22-23.) Hearring filed an informal grievance regarding this incident, which was denied because there is a video of Hearring performing his work without issue and "horseplaying with another inmate" during his shift. (ECF No. 34 at 74.) Hearring continued to file medical kites and grievances repeatedly explaining his lack of proper medical care, despite the NDOC's official responses stating he received treatment. (ECF Nos. 10, 34.) Hearring requested to be transferred to another facility for better care. (ECF No. 10 at 140, 148, 152, 156, 167.)

On February 15, 2024, Hearring was transferred to NNCC based on Dr. Connor's recommendation to receive exploratory surgery for his hip issue. (*Id*. at 25.) There is no evidence in the record to indicate Hearring received surgery. Around April 2024, Hearring saw Dr. Mike at Swift Medical Institute, who recommended a double hip replacement. (*Id*. at 6.) Hearring was issued a walker in response but did not receive surgery. (*Id*.) On July 19, 2024, Hearring was escorted to the yard while handcuffed and using his walker when he fell and experienced additional hip pain. (*Id.* at 7.) Hearring fell because his walker was unbalanced and the condition of the yard at NNCC, which Hearring alleges was not ADA compliant. (*Id*.) Prior to this incident, Hearring made multiple requests to be moved to an ADA approved cell but was denied. (*Id*.) Hearring continued to report hip pain through medical kites and grievances. (*Id*. at 85, 91, 94-95, 102, 129-132.)

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material.

*Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is “genuine” only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) “show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.” Fed. R. Civ. P. 56(c)(1). “A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.” Fed. R. Civ. P. 56(c)(2). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. “Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.” *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party’s claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v.*

*Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving party must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a pro se litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones,* 393 F.3d at 923.

The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited

records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## III. DISCUSSION

### A. Exhaustion

Under the Prison Litigation Reform Act, "[no] action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 524–25. A grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (*quoting Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)).

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). If the defendant makes such a showing, the burden shifts to the inmate to "show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

Defendants argue "Hearring has failed to exhaust any of [his] screened claims as required by the PLRA."[3] (ECF No. 34 at 10.) However, this statement does not align with

---

[3] The Court notes that Defendants concede that "grievance [#20063138013] was appealed by Hearring and appears to have been exhausted on April 5, 2023, upon

the record or Defendants' own motion. Administrative Regulation 740 ("AR 740") regulates the NDOC's process for offenders to properly exhaust their grievances. (ECF No. 34-2 at 2.) If a grievance at any level is partially granted, denied, or resolved, offenders are required to appeal to the next grievance level. (*Id*. at 6.) Offenders have exhausted the administrative remedy process once a response is issued to their second level grievance. (*Id.* at 16.) Hearring properly exhausted Grievance #20063138031 as required by AR 740 when receiving a response to his second level grievance on April 5, 2023. (ECF Nos. 10 at 166; 34 at 3.) Hearring's grievance discusses his pain, lack of adequate medical care, inability to sit or stand for long periods, and need for a double mattress ordered by medical. (ECF No. 10.) This is sufficient to alert Defendants to the nature of Hearring's issues relevant to the Eighth Amendment and ADA/RA claims. *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010).

Accordingly, the Court finds Hearring properly exhausted his claims and rejects Defendants' argument to the contrary.

**B. Eighth Amendment Deliberate Indifference**

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id*. at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id*. at 105.

Courts in the Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a

---

Hearring receiving a response to his second level grievance," yet spend nearly six pages of their motion arguing the contrary. (ECF No. 34 at 3, 6-11.)

subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). The defendants' conduct must consist of "more than ordinary lack of due care." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

In their motion for summary judgment, Defendants rely *solely* on Hearring's grievance history to overcome their heavy burden of demonstrating the absence of genuine disputes of material fact concerning Hearring's Eighth Amendment claim. (ECF No. 34.) The grievance process is designed to "alert the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. Davis*, 297 F.3d 646, 650 (7th Cir. 2002)). Grievances do not provide notice to specific prison actors of their conduct. *See Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) ("The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.") (citations omitted). Grievances are therefore not intended to establish facts necessary to a claim or "lay the groundwork for litigation." *Griffin*, 557 F.3d at 1120.

Defendants argue summary judgment is proper because they were not sufficiently involved in responding to Hearring's grievances, and therefore "could not have had any participation in denying Hearring medical care." (ECF No. 34 at 16-17.) Defendants' reliance on Hearring's grievances to show no dispute of material fact is unfounded. Simply because Defendants were not responsible for responding to grievances does not prove they were not involved with Hearring's medical care. Grievances are designed to provide

the prison with an inmate's personal account of an issue they are experiencing – not to provide a factually accurate report or place any particular officer on notice. *Griffin*, 557 F.3d at 1120. Grievances do not establish facts for the purpose of summary judgment, despite Defendants' treatment as such. *Id*. By relying entirely on Hearring's grievance records, the Court finds that Defendants have failed to come forward with sufficient evidence to meet their burden to show there is no genuine dispute of material fact regarding Hearring's Eighth Amendment claim.

Accordingly, Defendants' motion for summary judgment is denied as to Hearring's Eighth Amendment medical indifference claim. *Celotex*, 477 U.S. at 322-23 (If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment.).

**C. ADA and RA Disability Discrimination**

The Court next turns to Hearring's ADA and RA claims. Both the ADA and RA apply in the prison context. *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010). Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under the RA, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The same analysis applies to both the ADA and RA. *Zuckle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

The Ninth Circuit held that "the ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (emphasis added); see *also Marlor v. Madison County*, 50 Fed. App'x 872, 874 (9th Cir. 2002) (stating that inadequate medical care does not provide a basis

for an ADA claim unless medical services are withheld due to discrimination on the basis of disability). “Courts hold that allowing prisoners to utilize the ADA and RA as causes of action for not receiving medical treatment is simply making ‘an end run around the Eighth Amendment.’” *King v. Calderwood*, 2:13-cv-02080-GMN-PAL, 2015 WL 4937953, at *2 (D. Nev. Aug. 19, 2015) (citing *Deeds v. Bannister*, 3:11-cv-00351-LRH-VPC, 2013 WL 1250343, at *5 (D. Nev. Jan. 8, 2013)).

Defendants argue Hearring is unable to show he was entitled to disability accommodations, or alternatively, that he was denied those accommodations. (ECF No. 34 at 19.) In his sworn complaint, Hearring fails to address all elements required for a disability discrimination claim under the ADA and RA. *See Pakootas,* 905 F.3d at 593-94; *Nissan Fire & Marine Ins. Co.,* 210 F.3d at 1102 (If the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating there is an absence of evidence to support an essential element of the nonmoving party’s claim or claims.). Hearring alleges the ADA and RA were violated because the prisons were aware he could not sit or stand for long periods, and he received certain accommodations such as a double mattress, egg crate mattress, and walker. (ECF No. 10 at 5-6, 20, 28.) Hearring also claims he was brought to a non-ADA cell, and the prison yard is not ADA compliant. (*Id.* at 27.) However, Hearring *never* claims that he was unable to participate in prison programs, activities, or benefits without the provided provisions. 29 U.S.C. § 794(a). Additionally, Hearring fails to explain why he would be entitled to an ADA compliant cell or yard, or provide allegations explaining why the NNCC yard was not ADA compliant. The record is free of evidence to suggest Hearring was unable to access his current cell or the prison yard. Hearring does not allege that he was excluded from participation in or the benefit of prison activities, services, or programs, which is an essential element for an ADA or RA claim. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Therefore, Defendants meet their burden to show there is no genuine dispute of material fact, and the burden shifts to Hearring to show otherwise.

However, Hearring has failed to come forward any evidence to support the

essential elements of these claims. In this instance, Hearring's complaint fails to address the essential elements of these claims. Therefore, Hearring was required to come forward with some evidence to support the essential elements of these claims to survive summary judgment. In this instance, Hearring fails to attest to the truth of the allegations in his opposition, (ECF No. 36), under the penalty of perjury; therefore, his contentions are not considered evidence to meet his burden.[4] *Jones*, 393 F.3d at 923. Accordingly, Hearing does not provide the Court with any additional facts to support his allegations. Although Hearring's ADA and RA claim satisfied the Court's screening standard, the bare and conclusory allegations cannot establish a genuine dispute of material facts at the summary judgment stage. *Id.* (Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute). Therefore, Hearring fails to meet his burden.

Accordingly, the Court finds Defendants' motion for summary judgment is granted as to the ADA and RA claim.

**D. Qualified Immunity**

As the Court denies Defendants' motion for summary judgment on the merits of the Eighth Amendment deliberate indifference claim, the Court will now address Defendants' argument that they are entitled to qualified immunity. The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988–89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the Court asks "(1) whether the

---

[4] Hearring submits a signed declaration as an exhibit to his opposition, however the contentions are not relevant. (ECF No. 36 at 164-166.)

official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)) (emphasis added). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton*, 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). In the context of a motion for summary judgment, the court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell*, 763 F.3d at 1065.

Prong one cannot be established as there is a genuine dispute regarding Defendants' alleged violation of Hearring's Eighth Amendment rights, as explained above. Defendants failed to meet their burden to show there is no genuine dispute of material fact regarding Hearring's Eighth Amendment claim.

Accordingly, the Court denies Defendants' motion for summary judgment as to qualified immunity.[5]

///

///

///

///

///

///

///

///

---

[5] The Court cannot reach a prong two analysis due to the lack of evidence establishing Hearring's medical treatment. The Ninth Circuit finds "denying, delaying, or intentionally interfering with medical treatment" is clearly established law. *See Stewart v. Aranas*, 32 F.4th 1192, 1195-96 (9th Cir. 2022) (holding prison officials are not entitled to qualified immunity when waiting to treat an inmate with intractable pain for three-years). Nonetheless, the Court cannot apply this precedent as it is unclear from the present record if Defendants delayed or denied Hearring's treatment, and these factual issues must be addressed at trial.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment, (ECF No. 34), be **GRANTED** in part and **DENIED** in part as follows:

- **GRANTED**, as to the ADA and RA disability discrimination claim,
- **DENIED** as to the remainder of the motion.

**IT IS FURTHER ORDERED** that defendant James Dzurenda be dismissed from this action without prejudice.

**IT IS SO ORDERED.**

**DATED**: October 19, 2026.

**UNITED STATES MAGISTRATE JUDGE**